UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| BFI WASTE SYSTEMS OF LOUISIANA, LLC | : | CIVIL ACTION NO. 2:18-cv-1085 |
| VERSUS | : | UNASSIGNED DISTRICT JUDGE |
| S & S SPRINKLER CO., ET AL. | : | MAGISTRATE JUDGE KAY |

**REPORT AND RECOMMENDATION**

Before the court is a Motion for Summary Judgment [doc. 15] filed by defendants S & S Sprinkler Company ("S & S") and Zurich American Insurance Company ("Zurich") (collectively, "defendants"). Plaintiff BFI Waste Systems of Louisiana, LLC ("BFI") opposes the motion. Doc. 18. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

**I.**
**BACKGROUND**

This action arises from damages allegedly sustained by BFI on March 4, 2016, when a compactor at its waste management facility in Welsh, Louisiana, caught fire. Doc. 1, att. 3, ¶ 2. BFI it filed suit against S & S on July 5, 2018, in the 31st Judicial District Court, Jefferson Davis Parish, Louisiana. There BFI alleged that the extent of damages is attributable to the failure of the compactor's Amerex fire extinguishing system to discharge as designed when the compactor caught fire. *Id.* at ¶¶ 3, 7. At the time of the fire, it asserted, the Amerex system was regularly serviced by S & S, a licensed Amerex distributor and servicer, and had last been serviced by S &

S (and certified to be fully operational) on or about February 26, 2016. *Id.* at ¶¶ 3–4, 6. Accordingly, BFI maintains:

> [t]he . . . incident was caused entirely by the breach of the conventional obligation between BFI and S & S, specifically by the failure of S & S to properly maintain and service the [c]ompactor as required by the contract for service existing between S & S and BFI.

*Id.* at ¶ 11.

S & S removed the action to this court based on diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. BFI then amended its complaint to add Zurich, S & S's insurer, as a defendant. Doc. 11. Zurich and S & S now move for summary judgment, asserting that there was no service contract between BFI and S & S and that BFI's breach of contract claim is actually a disguised tort claim, which has prescribed under Louisiana law. Doc. 15, att. 1. BFI opposes the motion, maintaining that a contract between BFI and S & S existed through purchase orders relating to work done by S & S at BFI's facility and that its claim properly alleges a breach of that contract. Doc. 18.

## II.
### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986) (quotations omitted). This requires more than mere

allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 106 S.Ct. at 2511 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
#### APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 58 S.Ct. 817 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *See Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). State statutes of limitations, as well as "integral part[s]" of the statutes of limitations like tolling and equitable estoppel, are treated as substantive for the purposes of the *Erie* doctrine. *Guaranty Trust v. York*, 65 S.Ct. 1464, 1470–71 (1945); *Hollander v. Brown*, 457 F.3d 688, 694 (7th Cir. 2006) (quoting *Walker v. Armco Steel Corp.*, 100 S.Ct. 1978 (1980)). Accordingly, Louisiana law applies to the court's determination of whether BFI's claim has prescribed. Under Louisiana law, prescriptive statutes must be "strictly construed against prescription . . . and in favor of the claim that is said to be extinguished." *Murray v. Cannon Cochran Mgmt. Svcs., Inc.*, 2014 WL 5794997, at *5–*6 (M.D. La. Nov. 6, 2014) (quoting *La. Health Svc. and Indem. Co. v. Tarver*, 635 So.2d 1090, 1098 (La. 1994)). When faced with two

possible constructions of such a statute, the court must adopt the one that maintains enforcement of the claim rather than the one that bars enforcement. *Id.*

Tort claims brought under Louisiana law are subject to a one-year period of liberative prescription. La. Civ. Code art. 3492. Breach of contract claims, on the other hand, are subject to the general ten-year prescriptive period for personal actions. *Id.* at art. 3499; *see, e.g.*, *Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 345 (5th Cir. 2009). "The [appropriate] prescriptive period is not determined by the label of the cause of action but by 'the nature of the transaction and the underlying basis of the claim.'" *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 479 (5th Cir. 2002) (quoting *Davis v. Parker*, 58 F.3d 183, 189 (5th Cir. 1995)). For tort claims, prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating that he is the victim of a tort. *Bailey v. Khoury*, 891 So.2d 1268, 1276 (La. 2005). For contract claims, prescription commences from the date that the alleged breach occurred. *Loewer v. Tex. Gas Transmission Co.*, 615 F.Supp. 1, 2 (W.D. La. 1984).

BFI labels its petition as one "for damages for breach of a conventional obligation." Doc. 1, att. 3, p. 1. Under Louisiana law, a breach of contract action requires the existence of a contractual agreement and the alleged breach of a provision of that contract. *Richard v. Wal-Mart Stores, Inc.*, 2007 WL 4291934, at *3 (W.D. La. Nov. 30, 2007). The existence of a contract is a question of fact. *Read v. Willwoods Cmty.*, 165 So.3d 883, 888 (La. 2015). As BFI emphasizes, Louisiana law does not impose any generalized formality requirements on contracts. Instead, "unless the law prescribes a certain formality . . . offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." La. Civ. Code art. 1927. Accordingly, BFI maintains that the purchase orders qualify as a contract which S & S accepted by performance. Doc. 18, pp. 4–6.

The purchase orders in question are documents issued between S & S to Republic Services, Inc. ("Republic Services"). *See* doc. 18, att. 2, pp. 4–24. BFI identifies Republic Services as its parent company. Doc. 8 (amended corporate disclosure statement); doc. 18, att. 3 (declaration of retired BFI operations manager Denny Mize). In its complaint BFI alleges that the fire, which occurred on or about March 4, 2016, was caused by S & S's failure to properly maintain the Amerex system as agreed to under a service contract with BFI, and notes that the system was last serviced by S & S on or about February 26, 2016. Doc. 1, att. 3, ¶¶ 2–7. BFI also maintains that it "regularly contracted with S & S to provide preventative maintenance and service on the Amerex system" and that "[t]he conventional obligation existing between BFI, as obligee, and S & S, as obligor, required S & S to perform preventative maintenance on the . . . Amerex system and to certify that the system was fully operational."[1] *Id.* at ¶¶ 4–5.

Retired BFI operations manager Denny Mize also declares that BFI and S & S regularly contracted for maintenance of the Amerex system. Doc. 18, att. 3. He states that "[t]he interactions between BFI and S & S in February and March 2016 were performed pursuant to purchase orders from BFI to S & S" and that these orders resulted in S & S personnel performing the maintenance on BFI-owned equipment. *Id.* He also explains that Republic Services "centralized the purchase order and payment process for goods on services on behalf of its subsidiaries" and therefore regularly issued payment to S & S for the preventative maintenance it performed for BFI. *Id.*

BFI is listed on two purchase orders, both issued to S & S by Republic Services for S & S's inspection of the Amerex system on February 26, 2016. Doc. 18, att. 2, pp. 12–13. The

---

[1] Mize also declares that BFI and S & S regularly contracted for maintenance of the Amerex system. Doc. 18, att. 3. He states that "[t]he interactions between BFI and S & S in February and March 2016 were performed pursuant to purchase orders from BFI to S & S" and that these orders resulted in S & S personnel performing the maintenance on BFI-owned equipment. *Id.* He also explains that Republic Services "centralized the purchase order and payment process for goods on services on behalf of its subsidiaries" and therefore regularly issued payment to S & S for the preventative maintenance it performed for BFI. *Id.*

purchase orders incorporate by reference several pages of Republic Services' terms and conditions. *Id.* These terms and conditions refer only to Republic Services, not BFI. *See id.* at 14–24. The orders list S & S as "supplier" and provide that the services should be delivered and billed to Republic Services. *Id.* at 12–13. Under Republic Services's listing as the party to be billed, however, BFI is listed as the "Legal Entity." *Id.* BFI does not identify a specific term that was breached within either the purchase order or general terms and conditions, but instead maintains that S & S committed "contractual nonfeasance rather than . . . tortious misfeasance" through its alleged failure to perform the services it was obliged to render to BFI. Doc. 18, pp. 11–12.

S & S maintains (1) that the listing of BFI on the purchase orders is insufficient to make it a party to any contract created thereby, (2) that BFI's failure to identify a specific term allegedly breached by S & S also prevents it from stating a claim for breach of contract, (3) that BFI's contractual nonfeasance claim is instead one of tortious misfeasance, and (4) that BFI's action is a delictual one based on S & S's alleged failure to perform for faulty or negligent repair of the compactor.

BFI and Republic Services are separate corporate entities under Louisiana law. The fact that they are affiliated does not show that a contract with one is a contract with the other. *E.g.*, *Barnco Int'l, Inc. v. Arkla, Inc.*, 684 So.2d 986, 991 (La. Ct. App. 2d Cir. 1996); *see also Cable & Connector Warehouse, Inc. v. Omnimark, Inc.*, 700 So.2d 1273, 1276 (La. Ct. App. 4th Cir. 1997). However, the identification of BFI as the "legal entity" in the purchase orders, coupled with the uncontested fact that the work described in the purchase orders was conducted on BFI equipment for the benefit of BFI, provides sufficient evidence of BFI's involvement in the purchase order to create a genuine issue of material fact as to whether it was a party to any agreement arising from or described by those documents. *Cf. Barnco Int'l.*, supra, 684 So.2d at 991 ("Within the present

contract [between plaintiff and subsidiary], no other persons or entities are mentioned. Thus, under its provisions, nothing can be construed as obligating [the parent company].") Accordingly, this argument does not entitle defendants to summary judgment.

BFI does not dispute that its claim does not relate to a specific term under the purchase orders and instead maintains that it has a viable claim of nonfeasance. Nonfeasance, a contract claim, occurs where a party "has taken no action whatsoever." *Roger v. Dufrene*, 613 So.2d 947, 950 (La. 1993). Misfeasance, a tort claim, creates liability for underperforming parties in "virtually every type of contract where defective performance may injure the promisee." *Id.* at 949 & n. 6 (La. 1993) (quoting William L. Prosser, *Law of Torts*, § 16:92, at 617 (4th ed. 1983)). Defendants maintain that, because the repair/maintenance work on the Amerex system was performed in some fashion, any claim relating to it is instead one of misfeasance based in S & S's alleged failure to perform that work in a non-negligent manner. BFI insists that the claim is one of nonfeasance and asserts "that S & S failed to perform the maintenance it was contracted to perform in any meaningful way whatsoever." Doc. 18, pp. 12–13.

As BFI operations manager Denny Mize explained, "[a]fter S & S personnel performed the work requested . . . in a purchase order, they would issue an invoice for payment." Doc. 18, att. 3. BFI has also attached copies of these invoices, including one from February 26, 2016. Doc. 18, att. 2, p. 8. The February 26 invoice describes work done by S & S employee Dustin Hebert and was authorized by Mize on the day the work was performed. *Id.* BFI does not contest that some work was performed by S & S at its facility on the date in question.[2] There are no conflicting

---

[2] BFI also relies on the declaration of former Amerex employee Craig Voelkert, who investigated the compactor fire at BFI. Doc. 18, att. 4. He states that he discovered that the Amerex system "was inoperable at the time of the fire due to either tampering or more likely very poor service" and notes that his conversation with an S & S service technician "revealed that he did not use the proper equipment to test the systems." *Id.* at 2. These statements do not show that S & S performed none of the maintenance/service work, as required to support a claim of nonfeasance.

constructions of statute here. Even with the case law on nonfeasance versus misfeasance construed in a light most favorable to BFI, and assuming that the purchase orders formed a contract between BFI and S & S, any claim relating to S & S's performance on that date is one of misfeasance rather than nonfeasance. It is therefore subject to the one-year prescriptive period for tort claims.

Finally, BFI argues that its claim must be one of breach of contract even if it involves misfeasance, because "the breach alleged . . . could only occur in the context of [BFI and S & S's] contract" and because "[t]he duty and purported expertise of S & S in performing [its duty to maintain the Amerex system] is the crux of the cause of the contract between S & S and BFI." Doc. 18, p. 13. BFI's claim is based on S & S's alleged failure to properly perform under the service orders, not on any theory of misrepresentation or detrimental reliance. As noted above, the fact that the parties are in privity of contract does not transform a claim relating to one party's deficient performance into a breach of contract claim. *See Roger*, supra, 613 So.2d at 950. Accordingly, this argument has no foundation in law. Defendants have now shown that BFI's claim can only be maintained as a tort, and BFI does not contest that prescription commenced on any date later than that of the fire. BFI's claim prescribed on March 4, 2017, well before suit was filed on July 5, 2018. The Motion for Summary Judgment must therefore be granted.

### IV.
#### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Motion for Summary Judgment [doc. 15] be **GRANTED** and that this suit be **DISMISSED WITH PREJUDICE** as prescribed under Louisiana law.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed

factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

      THUS DONE this 27th day of December, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE